UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN E., <br><br>            Plaintiff, <br><br>     v. <br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, <br><br>            Defendant. | Case No. ED CV 17-918-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On May 11, 2017, plaintiff Karen E. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether there is

1

substantial evidence to support the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-9; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-5.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's RFC finding is not supported by substantial evidence. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions of this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was forty-nine years old on her alleged disability onset date and has an eighth grade education. AR at 56, 279. Plaintiff has past relevant work as a heating and air conditioning installer and servicer and as a tractor trailer truck driver. *Id*. at 51-52.

On June 11, 2013, plaintiff filed applications for DIB and SSI, alleging disability due to herniated discs, depression, and mood swing disorder. *Id*. at 56, 66. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 105-19.

On February 22, 2016, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 38-55. The ALJ also heard testimony from Sandra Fioretti, a vocational expert. *Id*. at 51-53. On March 15, 2016, the ALJ denied plaintiff's claims for benefits. *Id*. at 18-33.

The ALJ applied the well-known five-step sequential evaluation process and found, at step one, that plaintiff had not engaged in substantial gainful activity since February 1, 2013, the alleged disability onset date. *Id.* at 20.

At step two, the ALJ found plaintiff suffered from the following severe impairments: obesity; degenerative disc disease of the lumbar spine; asthma; and osteoarthritis of the right hip, status post right total hip arthroplasty. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 24.

The ALJ then assessed plaintiff's residual functional capacity,[1] and determined she had the RFC to perform medium work, with the limitations that she could: lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and walk for six hours out of an eight-hour workday with normal breaks; sit for six hours out of an eight-hour workday with normal breaks; occasionally push and pull with her right lower extremity; occasionally climb ramps and stairs; and occasionally balance, bend, stoop, kneel, and crouch. *Id*. at 25. The ALJ precluded plaintiff from: climbing ladders, ropes, or scaffolds; crawling; and moderate exposure to fumes, odors, dust, gases, and poor ventilation in the workplace. *Id*.

The ALJ found, at step four, that plaintiff is unable to perform any past relevant work. *Id.* at 30.

At step five, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including machine feeder, dining room attendant, and hand packager. *Id*. at 31-32. Consequently, the ALJ

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 32-33.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

Plaintiff challenges the ALJ's RFC determination, arguing it was not supported by substantial evidence. P. Mem. at 5-9. In particular, plaintiff argues the ALJ's reliance on State Agency physicians' opinions from August 2013 and January 2014 failed to account for medical evidence from the following two years for treatment plaintiff received for lower back pain and carpal tunnel syndrome.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)-(2).[2] The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.* Here, the ALJ found plaintiff could perform medium work, with the additional limitations that she could: stand and walk or sit for six hours out of an eight-hour workday with normal breaks; occasionally push and pull with her right lower extremity; occasionally climb ramps and stairs; and occasionally balance, bend, stoop, kneel, and crouch; but she could not: climb ladders, ropes, or scaffolds; crawl; or have moderate exposure to fumes, odors, dust, gases, and poor ventilation in the workplace. AR at 25,

In reaching this RFC determination, the ALJ expressly gave significant weight to the opinions of the State Agency physicians, Dr. K. Vu and Dr. H.M. Estrin, who opined limitations for plaintiff largely consistent with the RFC found by the ALJ. *Id.* at 29; *see id.* at 61-62, 84-85. Dr. Vu's opinion was given on August 5, 2013, and Dr. Estrin's was given on January 15, 2014.

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

Plaintiff argues these opinions, which were rendered more than two years before the ALJ's decision, are inadequate to support the RFC determination. Plaintiff points out that Drs. Vu and Estrin could not have considered the bulk of the medical evidence in the record, since most of it is from after January 2014. Plaintiff particularly points to the substantial evidence pertaining to plaintiff's lower back pain and carpal tunnel syndrome. She contends the ALJ simply relied on his own interpretation of the medical records, but he was "not medically qualified to translate the medical evidence" into an RFC determination, and instead should have ordered a consultative examination or a medical expert to review the record as a whole. P. Mem. at 7-9. The court agrees with plaintiff in part.

It is true that an ALJ may not act as his own medical expert, since he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (hearing examiner should not go outside the record to medical textbooks to make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data). But that is not what the ALJ did here with respect to plaintiff's lower back pain.

Drs. Vu and Estrin considered the evidence then available to them concerning plaintiff's back problems, among other impairments, and opined limitations accordingly. *See* AR at 59-62, 81-85. The ALJ gave significant weight to these opinions, but also reviewed in detail the subsequent medical

evidence in the record of plaintiff's treatment for low back pain, including MRI findings, epidural steroid injections, pain medication, and the results of these treatments. *Id.* at 26-30. The ALJ particularly noted that plaintiff reported receiving good pain relief from the injections and medication, with her symptoms improving as a result of this treatment. *Id.* at 29-30; *see id.* at 367-69, 877, 882. Thus, although there was additional evidence not considered by the State Agency physicians, the ALJ concluded it did not demonstrate a more severe lower back impairment than what Drs. Vu and Estrin already considered in formulating their opinions.

Certainly it may have been helpful for the ALJ to retain a medical expert to review these records, but it was not necessarily required where, as here, the ALJ reviewed the substantial medical evidence that supported his RFC determination with respect to plaintiff's lower back pain. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for his interpretation of medical evidence). Ultimately, a claimant's RFC is a matter for the ALJ to determine. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ . . . to determine residual functional capacity."). Thus, the court finds no error in assessing plaintiff's RFC with respect to plaintiff's low back pain.

Plaintiff's carpal tunnel syndrome is another matter. Although the ALJ did not find carpal tunnel syndrome to be a severe impairment at step two, and plaintiff does not challenge this, he was still obligated to consider plaintiff's carpal tunnel syndrome in assessing plaintiff's RFC. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

There was substantial evidence in the record of carpal tunnel syndrome. On January 14, 2015, in response to complaints by plaintiff of numbness and tingling

7

in both hands, Dr. Antoine Elhajjar performed nerve conduction velocity and electromyography tests on plaintiff. AR at 859. The tests revealed abnormal results, with evidence of bilateral median neuropathies at the wrists, or carpal tunnel syndrome. *Id.* at 860. On July 16, 2015, Dr. David Duffner observed positive Phalen and Tinel's testing. *Id.* at 344. He agreed with Dr. Elhajjar's carpal tunnel diagnosis, and requested authorization for bilateral carpal tunnel release. *Id.* at 345.

Although the ALJ recognized (and rejected) plaintiff's allegations of numbness and needle-like sensations in her arms, particularly after lifting something like a gallon of milk (*id.* at 25-26), in assessing plaintiff's RFC the ALJ did not discuss any of the medical evidence of carpal tunnel syndrome. *See id.* at 25-30. Certainly plaintiff's RFC does not reflect any manipulative, gripping, or other limitations that might be expected for someone with carpal tunnel syndrome. This failure to even consider what limitations might be warranted due to plaintiff's carpal tunnel syndrome was error.

Moreover, even if the ALJ had discussed the evidence of carpal tunnel syndrome, he would have had little basis to determine what functional limitations it warranted since there was no such evidence in the record. Drs. Vu and Estrin considered medical evidence concerning plaintiff's lower back pain and certain other impairments, but it does not appear they reviewed any records concerning carpal tunnel syndrome, and certainly they did not opine any limitations related to carpal tunnel syndrome. *See* AR at 57-62, 79-86. Thus, for the ALJ to assess functional limitations due to carpal tunnel syndrome on this record, he would have been forced to act as his own medical expert and translate the data himself, something he was not qualified to do. *See Nguyen*, 172 F.3d at 35. Under these circumstance, the ALJ had a duty to develop the record further, at a minimum by retaining a medical expert to evaluate the records of carpal tunnel syndrome, if not

8

by ordering a consultative examination. *See Mayes,* 276 F.3d at 459-60 ("An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see also Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001).

In sum, the record was inadequate with respect to plaintiff's carpal tunnel syndrome for the ALJ to properly determine plaintiff's RFC. The ALJ erred in failing to consider plaintiff's carpal tunnel impairment, and erred in failing to develop the record further. As such, the ALJ's RFC determination was not supported by substantial evidence.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for

further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to consider all of plaintiff's impairments in determining her RFC, and failed to fully and fairly develop the record. On remand, the ALJ shall develop the record further with respect to plaintiff's carpal tunnel syndrome, including by retaining a medical expert to review the entire record or by ordering a consultative examination. The ALJ shall then consider all of plaintiff's impairments in reassessing her RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 27, 2019

SHERI PYM
United States Magistrate Judge